IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JACQUELINE AGNES CLAXTON, | ) Civ. No. 12-00433 JMS-KSC |
| | ) (Cr. No.  10-00108 JMS) |
| Petitioner, | ) |
| | ) ORDER (1) DENYING IN PART |
| vs. | ) MOTION UNDER 28 U.S.C. § 2255 |
| | ) TO VACATE, SET ASIDE, OR |
| UNITED STATES OF AMERICA, | ) CORRECT SENTENCE BY A |
| | ) PERSON IN FEDERAL CUSTODY; |
| Respondent. | ) AND (2) DENYING CERTIFICATE |
| | ) OF APPEALABILITY AS TO |
| _____ | ) CERTAIN CLAIMS |

**ORDER (1) DENYING IN PART MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY; AND (2) DENYING CERTIFICATE OF APPEALABILITY AS TO CERTAIN CLAIMS**

## I. INTRODUCTION

On September 17, 2010, Petitioner Jacqueline Agnes Claxton's ("Claxton" or "Petitioner") pleaded guilty to (1) conspiracy to distribute, and possess with intent to distribute, 50 grams or more of methamphetamine, and (2) possession with intent to distribute 50 grams or more of methamphetamine.  On August 4, 2011, the court sentenced Claxton to a term of 72 months imprisonment, four years of supervised release, and a special assessment of $200.  Currently before the court is Claxton's Motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct her Sentence ("§ 2255 Motion").

Claxton's § 2255 Motion challenges her conviction and sentence, raising five grounds of ineffective assistance of counsel: (1) counsel failed to negotiate and obtain a plea agreement as she instructed; (2) counsel failed to properly review the presentence report ("PSR") with her and failed to prepare objections; (3) counsel failed at sentencing to adequately argue in support of a mitigating role reduction under § 3B1.2 of the United States Sentencing Guidelines ("U.S.S.G."); (4) counsel failed to file a notice of appeal, as she had instructed, of the denial of her mitigating role reduction; and (5) counsel failed to seek post-sentencing relief under Federal Rule of Criminal Procedure 35(b) ("Rule 35(b)") for her substantial assistance to the government.

The § 2255 Motion is DENIED as to grounds One, Two, Three, and Five. As to ground Four, the court directs the United States to inform the court by **March 28, 2013** if (1) it seeks an evidentiary hearing, or (2) it elects not to oppose the Motion and instead permit an appeal. *See United States v. Sandoval-Lopez*, 409 F.3d 1193, 1198 (9th Cir. 2005).

## II. BACKGROUND

### A. Claxton's Arrest and Appointment of Attorney Park

Claxton was arrested on March 26, 2010, after being found possessing over 3,500 grams of methamphetamine. Doc. No. 1, Compl. at 1. Drug

Enforcement Agency agents also seized $34,000 from a safe in Claxton's hotel room. Doc. No. 99-3, Gov't's Ex. 3 at 16, 19. On March 29, 2010, attorney Michael Park ("Park") was appointed to represent Claxton. The next day, she was indicted on one Count of conspiracy to distribute and possess with intent to distribute 50 or more grams of methamphetamine (Count One), and one Count of possession with intent to distribute 50 or more grams of methamphetamine (Count Two). Doc. No. 4, Indictment at 1-2. With Park's assistance, on April 8, 2010, a Magistrate Judge ordered that Claxton be released on $15,000 bond. She was released on April 19, 2010 after the government unsuccessfully appealed the Magistrate Judge's Order to this court, and she returned to California pending trial.

**B.      Appointment of Attorney Kagiwada, and Claxton's Guilty Plea**

On June 14, 2010, Park withdrew from representing Claxton, and attorney Cynthia Kagiwada ("Kagiwada") was appointed to replace him. Doc. Nos. 36, 37. On September 17, 2010, after consulting with Kagiwada, Claxton pleaded guilty without a plea agreement to both Counts of the indictment. Doc. No. 57. Among other assertions, Claxton now contends that she had instructed Park and Kagiwada to seek a plea agreement with the government because she wanted to cooperate, and that their failure to seek and obtain such an agreement constitutes ineffective assistance of counsel. Doc. No. 90, Pet'r's Mot. at 6.

Claxton attests, in part, that:

> 8.  After attorney Parks [sic] was replaced by attorney Kagiwada, I immediately let her know that I wanted and intended to cooperate with the government and to seek a plea bargain on my behalf.  She informed me as did attorney Parks [sic], that the government was not offering a plea bargain in my case. . . .

> 9.  During my many proffer sessions, the government never offered anything in writing that they would not negotiate a plea bargain and I was never notified that either attorney had even asked for one.

> 10.  Attorney Kagiwada also told me that she would not pursue a plea bargain because it would foreclose my option to appeal.  She never explained that any waiver could be worded to protect the right to appeal under certain circumstances.

Doc. No. 90-2, Pet'r's Decl. ¶¶ 8-10.

In this regard, Kagiwada attests that Claxton was seeking the lowest possible sentence, and that she advised Claxton that she could plead guilty by way of a plea agreement or plead "straight up."  Doc. No. 99-2, Kagiwada Decl. ¶¶ 10-11.  According to Kagiwada, she sought a plea agreement but the government would not agree to the terms that Claxton wanted (which were "certain promises from the government respecting her sentence.")  *Id.* ¶ 13.[1]  Consistent with

---

[1] Park attests that "Claxton did not request to plea bargain with the government," Doc. No. 99-1, Park Decl. ¶ 4, when she was initially detained.  He further states that "[f]rom the time of her release [on bond] to [Park's] withdrawal from her case, [Claxton] did not ask to enter into

(continued...)

Claxton's Declaration, Kagiwada attests she told Claxton that a plea bargain would require foregoing an option to appeal, and would require "cooperation language" in a potentially public document. Kagiwada also states that she advised Claxton that a plea agreement would not likely result in a sentencing benefit because her sentencing guidelines calculation would remain the same whether or not she had such an agreement. *Id.* ¶¶ 11, 13. She then advised Claxton that pleading guilty "straight up" would preserve a right to appeal and still enable Claxton to seek a lower sentence if the government determined that she provided "substantial assistance" through cooperation. *Id.* ¶¶ 12, 13. Kagiwada attests that, based on this advice, Claxton pleaded guilty without a plea agreement. *Id.* ¶ 13.

## C.    Retention of Attorney Harrison, and Claxton's Sentencing

Kagiwada continued to represent Claxton after she pleaded guilty, and before she was sentenced. Claxton alleges that during this time Kagiwada failed to take certain actions regarding her cooperation with government authorities. Doc. No. 90-2, Pet'r's Decl. at 4-5. Nevertheless, Kagiwada obtained continuances of Claxton's sentencing hearing, Doc. Nos. 62, 66, and filed objections to a draft PSR. Doc. No. 63. On April 21, 2011, attorney William Harrison substituted as

---

[1](...continued)
any plea deals with the government." *Id.* ¶ 11.

retained counsel for Claxton, and Kagiwada withdrew.  Doc. No. 71.  Harrison

then represented Claxton though sentencing.  Doc. No. 99-7, Harrison Decl. ¶ 2.

On August 1, 2011, Harrison filed a twenty-nine page Motion for Further

Downward Departure and Supplemental Sentencing Statement ("Supplemental

Sentencing Statement"), arguing (among other issues) for a mitigating role

adjustment under U.S.S.G. § 3B1.2(b).  Doc. No. 78, Supplemental Sentencing

Statement at 16-18.

At the August 4, 2011 sentencing hearing, the court denied Claxton an

adjustment for a mitigating role as a minor participant.  After Claxton testified, the

court found that Claxton's role was not minor, especially considering the

substantial amount of cash and methamphetamine (approximately six pounds) for

which Claxton was accountable.  Doc. No. 99-5, Gov't's Ex. 4 at 52-53.[2]  The

court also disagreed with Claxton that she was simply a courier.  Given the

evidence, she was not entitled to a downward adjustment as a minor participant in

the offense.  *Id.*; *See, e.g.*, *United States v. Rodriguez-Castro*, 641 F.3d 1189, 1193

(9th Cir. 2011) (upholding a denial of a minor-role adjustment, considering

defendant's role in preparing for the offense and the substantial quantity of drugs

---

[2] Sentencing documents indicate Claxton was accountable for 2.64 kilograms of methamphetamine, which is approximately 5.82 pounds.  *See* Doc. No. 84, PSR at 7.

involved).

In considering both Counts of the Indictment, the court based its sentence on the following U.S.S.G. calculations: (1) a base offense level of 38 (given, under U.S.S.G. § 2D1.1(c)(1), that Claxton was responsible for more than 1.5 kg of methamphetamine); (2) a two-level decrease under the safety valve (U.S.S.G. §§ 2D1.1(b)(16) & 5C1.2); and (3) an additional three-level decrease for acceptance of responsibility (U.S.S.G. § 3E1.1). *See* Doc. No. 84, PSR at 7-8. These calculations resulted in a total offense level of 33, with a criminal history category I (resulting in an advisory guideline range of 135 to 168 months incarceration). Doc. No. 99-5, Gov't's Ex. 4 at 56. The court then granted the government's Motion for Downward Departure pursuant to U.S.S.G. § 5K1.1. *Id.* at 57. Then, considering the 18 U.S.C. § 3553(a) sentencing factors and Claxton's cooperation, the court imposed a 72-month term of imprisonment. *Id.* at 75-85. This was significantly less than the government's recommendation of a sentence of 97 months. *See* Doc. No. 75, Gov't's Mot. at 3.

Judgment on both Counts was entered on August 8, 2011, with the 72-month term of imprisonment (as to each Count) to run concurrently.[3] Doc. No. 81.

---

[3] Although the indictment charged two Counts (and Claxton pleaded guilty to both), the same relevant conduct is encompassed in both the conspiracy and substantive offense count for purposes of determining the guideline range. *See* U.S.S.G. § 1B1.3. That is, Count Two

(continued...)

After sentence was imposed, Harrison did not file a notice of appeal. Claxton now claims she instructed Harrison to appeal her sentence, and claims his failure to do so rendered his representation ineffective. Doc. No. 90-1, Pet'r's Mot. at 10. Claxton also claims Harrison was ineffective because he did not subsequently seek a reduction of her sentence under Rule 35(b) as he allegedly said he would do. *Id.* at 12. In contrast, Harrison attests that Claxton did not want to appeal her sentence, and that he never told her he would file a Rule 35(b) Motion. Doc. No. 99-7, Harrison Decl. ¶ 10.

## D.    Procedural Background

Claxton filed her § 2255 Motion on July 31, 2012. Doc. No. 90. The court then found the attorney-client privilege waived as to Claxton's communications with Park, Kagiwada, and Harrison. Doc. No. 96. On November 29, 2012, the government filed its Response. Doc. No. 99. Claxton filed her Reply on February 26, 2013. Doc. No. 103. The court finds the matter suitable for

---

[3](...continued)
(possession with intent to distribute) charges the substantive offense that was the object of the conspiracy charged in Count One. Under § 1B1.3, Claxton was accountable for the same amount of drugs under either or both Counts, and thus her base offense level under U.S.S.G. § 2D1.1(c)(1) would have been the same whether she had pleaded guilty to one or both Counts. *See, e.g.*, *United States v. Grissom*, 525 F.3d 691, 697 (9th Cir. 2008) ("[T]he conduct determining the offense level is not limited to the conduct underlying the conviction, but can include 'all relevant conduct under § 1B1.3 (Relevant Conduct).'" (quoting U.S.S.G. § 1B1.1 cmt. n.1(H)).

decision without a hearing under Local Rule 7.2(d).

### III.  <u>STANDARD OF REVIEW</u>

Title 28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to be
> released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess
> of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the
> sentence.

A court may deny a § 2255 motion if "it plainly appears from the

motion, any attached exhibits, and the record of prior proceedings that the moving

party is not entitled to relief."  R. 4(b) Governing Section 2255 Proceedings.  A

court need not hold an evidentiary hearing if the allegations are "palpably

incredible or patently frivolous" or if the issues can be conclusively decided on the

basis of the evidence in the record.  *See Blackledge v. Allison*, 431 U.S. 63, 76

(1977); *see also United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998)

(noting that a "district court has discretion to deny an evidentiary hearing on a

§ 2255 claim where the files and records conclusively show that the movant is not

entitled to relief").  Conclusory statements in a § 2255 motion are insufficient to

require a hearing.  *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).  A

9

petitioner must allege specific facts that, if true, would entitle him or her to relief. *See United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (citing *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996)).

## IV.  <u>DISCUSSION</u>

As set forth above, Claxton raises five grounds for ineffective assistance: (1) counsel (Park and/or Kagiwada) failed to negotiate and obtain a plea agreement as instructed; (2) counsel (Kagiwada and/or Harrison) failed to properly review the PSR with her and failed to adequately prepare objections; (3) counsel (Harrison) failed at sentencing to adequately argue in support of a mitigating role reduction under U.S.S.G. § 3B1.2; (4) counsel (Harrison) failed to file an appeal, as Claxton had instructed, of the denial of her mitigating role reduction; and (5) counsel (Harrison) failed to seek post-sentencing relief under Rule 35(b) for substantial assistance.  Doc. No. 90-1, Pet'r's Mot. at 5.

The court begins by setting forth the applicable legal standards, and then addresses the substance of each ground.  The court first addresses grounds One, Two, Three, and Five (all of which have no merit), and then addresses ground Four (which requires clarification from the United States).

///

///

**A.** **Legal Standards for Claxton's Ineffective Assistance of Counsel Claims**

*1.* *General Standards*

To prevail on an ineffective assistance claim, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). That is, the petitioner must also show that the deficiency was prejudicial. *Id.* at 692.

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Conclusory allegations of ineffective assistance of counsel made with no factual or legal explanation fall well short of stating a cognizable claim for ineffective assistance of counsel. *See Blackledge*, 431 U.S. at 74 ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal."). A court need not determine whether counsel's

performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. *See Strickland*, 466 U.S. at 697. In other words, any deficiency that does not result in prejudice necessarily fails.

### 2. *Guilty Pleas and Plea Bargaining*

Generally, "[a] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984), *overruled in part on other grounds by Puckett v. United States*, 556 U.S. 129 (2009).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective]."

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Thus, "the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Cabinatan v. United States*, 2011 WL 255691, at *3 (D. Haw. Jan. 26, 2011) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

"[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1406 (2012) (quoting *Padilla v. Kentucky*, 556

U.S. 356, ___, 130 S. Ct. 1473, 1486 (2010)). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 1408. Similarly, "[d]uring plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (internal citation omitted). And thus counsel may be deficient by advising a defendant to reject a plea offer because he or she could not be convicted at trial. *Id.*

Where a petitioner has pleaded guilty and is asserting ineffective assistance of counsel, the second *Strickland* requirement (prejudice) focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. "In cases where a defendant complains that ineffective assistance led him [or her] to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial.'" *Frye*, 132 S. Ct. at 1409 (quoting *Hill*, 474 U.S. at 59). Similarly, "[t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance," *id.*, among other factors, "it is necessary to show a reasonable probability that the end result of the

criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* (citing *Glover v. United States*, 531 U.S. 198, 203 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance")). Likewise,

> [i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.

*Lafler*, 132 S. Ct. at 1387.

## B. Claxton's Allegations of Ineffective Assistance

### 1. Failure to Negotiate and Obtain a Plea Agreement

Claxton contends that she asked Park to negotiate a plea agreement but Park told her "the government was not offering a plea bargain." Doc. No. 90-2, Pet'r's Decl. ¶ 4.[4] After Park withdrew and Kagiwada was appointed, Claxton also attests that she asked Kagiwada to seek a plea bargain, but Kagiwada informed her that "the government was not offering a plea bargain in my case." *Id.* ¶ 8. She

---

[4] Although Park disputes that Claxton asked him to seek a plea agreement, Doc. No. 99-1, Park Decl. ¶¶ 4, 11, this dispute does not require further fact-finding. Even assuming Claxton asked Park to negotiate with the government, it is undisputed that the government did not offer a plea bargain that Park failed to communicate to Claxton. And, as analyzed below, even assuming deficient performance in failing to seek a plea bargain, there is no possible prejudice to Claxton for such a presumed failure.

complains that Kagiwada failed to pursue an agreement after advising her that, if she wanted to cooperate, she should do so without a plea agreement and keep her appeal options open. Claxton argues that counsel violated the same duties regarding plea bargaining that are analyzed in *Frye* and *Lafler*, and so she contends that she was denied effective assistance of counsel at this critical stage. Doc. No. 90-1, Pet'r's Mot. at 6. This claim lacks merit.

Initially, Claxton does not assert (and the record contains no such evidence) that either Park or Kagiwada failed to notify her of a government offer of a plea agreement with favorable terms. Nor does Claxton claim that counsel rejected such an offer without consulting her. Indeed, Claxton acknowledges that there was no such offer, and her claim is essentially the opposite -- that counsel failed to seek and obtain such an offer. Thus, *Frye* -- which analyzed a situation where counsel allowed a formal government plea offer to expire without even allowing the defendant to consider it -- is of no help to Claxton. Likewise, *Lafler* does not apply because Claxton does not claim that counsel improperly advised her to reject a favorable offer.

Moreover, Kagiwada's advice to plead "straight up" without a plea bargain, and instead attempt to seek a lower sentence by other means, was objectively reasonable. As Kagiwada explains, in the District of Hawaii, the

government requires an appeal waiver in plea agreements.  Doc. No. 99-2, Kagiwada Decl. ¶ 11.  Moreover, as noted above when explaining the basis of the court's sentence, based on the guideline's relevant conduct provision, a plea agreement would not have resulted in any sentencing benefit to Claxton (as Kagiwada says she advised Claxton).  That is, the relevant conduct under U.S.S.G. § 1B1.3 was based on the full amount of methamphetamine involved, and thus Claxton's base offense level would have been the same whether she pleaded guilty to one or both Counts.  *See, e.g.*, *Grissom*, 525 F.3d at 697.  That is, even if Claxton had agreed to plead guilty to only one Count (in exchange for the government dropping the other), her base offense level would have been the same. It was thus "reasonable professional judgment" that was "made after thorough investigation of law and facts,"  *Strickland*, 466 U.S. at 690, for Kagiwada to advise Claxton that she should plead "straight up," retain a right to appeal, and seek a lower sentence by other means.

And for that precise reason, at *Strickland*'s second step, Claxton cannot demonstrate prejudice.  Again, Claxton was accountable for the same amount of drugs under either or both Counts of the Indictment, and so her base offense level would have been the same whether she had pleaded guilty to one or both Counts of the Indictment.  She cannot "show a reasonable probability that the

end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 132 S. Ct. at 1409. She did not lose a plea opportunity that resulted "in a conviction on more serious charges or the imposition of a more severe sentence." *Lafler*, 132 S. Ct. at 1387.

Given that prejudice cannot have resulted from the allegations that counsel failed to seek and obtain a plea bargain, there is no possibility that Claxton can be entitled to relief on this claim. This issue can be conclusively decided on the basis of the evidence in the record, and there is no reason to conduct an evidentiary hearing on this claim. *See, e.g.*, *Blackledge*, 431 U.S. at 76; *Mejia-Mesa*, 153 F.3d at 929.

### 2. *Failure to Properly Review and Object to the PSR*

Claxton next contends that Kagiwada and Harrison failed to properly review the PSR with her, and that Harrison failed to adequately object to the PSR. Doc. No. 90-1, Pet'r's Mot. at 8; Doc. No. 90-2, Pet'r's Decl. ¶¶ 21, 25. She claims Kagiwada simply mailed her a copy of the draft PSR and told her to read it over. Doc. No. 90-1, Pet'r's Mot. at 8. She "believes this failure of review and discussion relevant to objections which should have been filed (particularly regarding her role in the offense) largely contributed to this Court's findings at sentencing." *Id.* "She alleges deficient and prejudicial performance by both

attorneys involved bordering on abandonment." *Id.*

In response, Kagiwada confirms that she sent Claxton a copy of the draft PSR, and details the attempts she made to review it with her. Doc. No. 99-2, Kagiwada Decl. ¶ 28. Kagiwada acknowledges that the attorney-client relationship had broken down by this time. *Id.* Nevertheless, Kagiwada filed a sentencing statement on February 17, 2011, based on her knowledge of the guidelines and prior conversations with Claxton. *Id.*

Harrison attests to his conversations with Claxton regarding the PSR, and describes a meeting in his office (prior to sentencing) with Claxton, where they discussed the PSR and other sentencing matters. Doc. No. 99-7, Harrison Decl. ¶ 4. And, as set forth above, Harrison filed a detailed Supplemental Sentencing Statement on August 1, 2011. Doc. No. 78. This Supplemental Sentencing Statement includes substantial information relevant to the PSR, and appropriately advocates for a lower sentence. Harrison also pursued an evidentiary hearing at sentencing (a relatively rare event) in support of his sentencing arguments. Doc. No. 99-4, Gov't Ex. 4 at 20-45.

Claxton's allegations regarding counsels' review of the PSR fail to support a claim for ineffective assistance of counsel. Initially, the court specifically asked Claxton at her sentencing hearing whether she "had a full and

fair opportunity to read, review and discuss the presentence report along with all of the addendum and to file any objections, whether factual or legal, in writing." Doc. No. 99-4, Gov't's Ex. 4 at 4. Claxton herself answered "Yes, your Honor" directly to the court. *Id.* Moreover, Claxton acknowledges that Kagiwada filed a sentencing statement on Claxton's behalf on February 17, 2011, objecting to portions of the draft PSR. Further, Claxton fails to point to anything in the PSR that was wrong, much less anything that would have made any difference in her sentence. The sentencing statement filed by Kagiwada on February 17, 2011 raises and preserves all relevant objections regarding the guidelines calculations and argues that Claxton's role in the charged offenses was minor. *See* Doc. No. 99-6, Gov't's Ex. 5. Likewise, Harrison's Supplemental Sentencing Statement, and his oral arguments at the sentencing hearing, reasonably advocated for mitigating factors under § 3553(a).

Accordingly, even assuming that one or both counsel did not review the PSR with Claxton to her satisfaction, there is no basis for finding that performance of counsel in this regard was deficient, or that any deficiency was prejudicial to her. *See Strickland*, 466 U.S. at 687-88.

///

///

### 3. *Failure to Adequately Argue for a Mitigating Role Reduction*

Closely related to the prior ground, Claxton also argues that Harrison failed to adequately argue for a mitigating role adjustment under U.S.S.G. § 3B1.2. This argument fails. It amounts to nothing more than seeking reconsideration of the court's refusal to make such a reduction.

The record reflects that Harrison adequately raised and argued (both in writing and orally at the sentencing hearing) all relevant information regarding Claxton's role in the charged offenses. But no argument could have negated the effect of the *evidence* establishing that Claxton was not a minimal or minor participant. Claxton was trusted to handle large quantities of methamphetamine and money from drug sales. Doc. No. 99-4, Gov't's Ex. 4 at 53. Claxton admitted that she had delivered a pound of methamphetamine "three or four times" prior to her March 26, 2010 arrest. *Id.* at 28. She admitted that drug records were found in the safe in her hotel room, and that she had $34,000 in "drug money." *Id.* at 30. Based on Claxton's guilty plea and her testimony at the sentencing hearing, the court found she had been involved in the conspiracy on a regular basis for several months. She was not simply a courier. Given these facts, she simply could not qualify -- despite the arguments made by Harrison -- for a mitigating role reduction as a minimal or minor participant under § 3B1.2. *See, e.g.*, *Rodriguez-Castro*, 641

F.3d at 1193.

In short, the record plainly reflects neither that Harrison was ineffective in arguing for a mitigating role reduction, nor was any deficiency prejudicial. Because there is no possibility that Claxton could be entitled to relief on this ineffective assistance of counsel claim, there is no reason to conduct an evidentiary hearing. *See, e.g.*, *Blackledge*, 431 U.S. at 76; *Mejia-Mesa*, 153 F.3d at 929.

### 4. Failure to Seek Relief under Rule 35(b)

Claxton also argues that Harrison was ineffective "for failures in seeking post-sentencing Rule 35(b) Motion as indicated would [be] available by [the] government." Doc. No. 90-1, Pet'r's Mot. at 5. Rule 35 provides, in pertinent part as follows:

(b) Reducing a Sentence for Substantial Assistance.

(1) In General. *Upon the government's motion* made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person. (Emphasis added.)

Claxton acknowledges that a Rule 35(b) Motion must come from the government. Doc. No. 90-2, Pet'r's Decl. ¶ 26. But she contends that "when I requested that attorney Harrison find out about a Rule 35 Motion for further

21

reduction, he informed me that after arrests were made he would file one on my behalf." *Id.* For this, she asserts ineffective assistance of counsel.[5]

This ground for relief plainly fails. Under Rule 35(b)'s terms, only the government may seek to reduce a sentence for substantial assistance, and thus there can be no ineffective assistance to the extent Claxton contends Harrison was deficient in failing to make a Rule 35(b) motion. As *United States v. Calderon*, 2007 WL 1574541 (N.D. Okla. May 29, 2007), explains:

> Defendant claims that [counsel] promised to file a motion to reduce defendant's sentence pursuant to Fed. R. Crim. P. 35(b). However, a Rule 35(b) motion must be filed by the government, and the filing of any such motion is discretionary on the part of the prosecutor. *United States v. Perez*, 955 F.2d 34, 35 (10th Cir. 1992). [Counsel's] alleged failure to file a Rule 35(b) motion can not constitute ineffective assistance of counsel, because he had no legal authority to file that motion.

*Id.* at *7 n.8. *See also United States v. Astacio*, 14 F. Supp. 2d 816, 820 (E.D. Va. 1998) ("[I]t was entirely proper for defense counsel not to seek a Rule 35 departure, as the decision lies entirely with the prosecutor and the court. Since defendant fails to satisfy the cause requirement of *Strickland*, his second claim of

---

[5] In this regard, Harrison attests that "I did not inform Ms. Claxton at any time that I would file a Rule 35 motion on her behalf. What I told her was that the government could seek to give her additional credit and file such a motion should her prior cooperation bare fruit after her sentencing." Doc. No. 99-7, Harrison Decl. ¶ 10. The court need not resolve this factual dispute at an evidentiary hearing because, as set forth below, Claxton cannot demonstrate ineffective assistance of counsel even if Harrison told her he would seek Rule 35(b) relief.

ineffective assistance of counsel must fail."); *United States v. Gonzalez*, 2009 WL 3754360, at *2 (D. Neb. Nov. 2, 2009) ("Insofar as the defendant faults her attorney for failing to file a Rule 35(b) motion, ground one of the § 2255 motion fails to state a legitimate claim for relief.  Only the government may file a Rule 35(b) motion.") (citation omitted).

Further, Claxton demonstrates no basis for asserting she would have been (or is presently) entitled to a Rule 35(b) reduction -- even if Harrison had somehow led her to believe he would approach the government for such relief. That is, Claxton cannot demonstrate prejudice under *Strickland*'s second prong. *See Hernandez v. United States*, 2011 WL 335032, at *2 (N.D. Ohio Jan. 31, 2011) ("[C]ounsel's failure to approach the government post-sentencing regarding a Rule 35(b) reduction does not amount to ineffective assistance of counsel.  There is no right to counsel during a Rule 35(b) proceeding.") (citing *United States v. Taylor*, 414 F.3d 528, 535-36 (4th Cir. 2005), & *United States v. Palomo*, 80 F.3d 138, 142 (5th Cir. 1996)) (other citation omitted).  *Cf. Scott v. United States*, 473 F.3d 1262, 1264 (8th Cir. 2007) (upholding denial of § 2255 petition seeking relief for counsel's failure to file an appeal of a denial of Rule 35(b) motion, because there is no right to counsel for such proceedings) (citing *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (per curiam) ("Since respondent had no constitutional right to

counsel, he could not be deprived of the effective assistance of counsel.")).

In short, there is no basis for an ineffective assistance of counsel claim, even assuming Harrison told Claxton he would seek Rule 35(b) relief on her behalf.

### 5. Failure to File a Notice of Appeal

Lastly, the court addresses Claxton's claim that Harrison was ineffective in failing to file a notice of appeal from her sentence. Specifically, Claxton contends that she instructed Harrison to appeal from the denial of a mitigation role adjustment under U.S.S.G. § 3B1.2. Doc. No. 90-2, Pet'r's Mot. at 2; Doc. No. 103, Pet'r's Reply at 8. Harrison, however, specifically denies that Claxton instructed him to appeal. *See* Doc. No. 99-7, Harrison Decl. ¶ 5 ("[Claxton] was asked whether she desired to appeal the decision of the court [after sentencing] and she indicated that *she did not*.").

The Sixth Amendment guarantees the right to effective assistance of counsel at all critical stages of a criminal proceeding, including sentencing. *See United States v. Gonzalez*, 113 F.3d. 1026, 1029 (9th Cir. 1997). Further, the Sixth Amendment may be violated if counsel fails to file a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Here, although Harrison denies being instructed to appeal, Claxton simply disagrees. As Claxton recognizes, the court

"is faced with competing Sworn Declarations, one from Claxton and one from attorney Harrison."  Doc. No. 103, Pet'r's Reply at 8.

The Ninth Circuit addressed a similar situation in *Sandoval-Lopez*, where the defendant entered into a plea agreement largely waiving his right to appeal.  In a subsequent § 2255 motion, the defendant claimed that despite a request, his counsel failed to file a notice of appeal.  Although recognizing the rule it announced was "contrary to common sense," 409 F.3d at 1196, *Sandoval-Lopez* held that the failure to file the appeal, even in the face of an appeal waiver, was ineffective assistance of counsel:

> If, as Sandoval-Lopez claims, it is true that he explicitly told his lawyer to appeal his case and his lawyer refused, then we are required by *Flores-Ortega* to conclude that it was deficient performance not to appeal and that Sandoval-Lopez was prejudiced.  The prejudice in failure to file a notice of appeal cases is that the defendant lost his chance to file the appeal, not that he lost a favorable result that he would have obtained by appeal.

*Id.* at 1197.  That is, even assuming an appeal of a sentence would be meritless, "prejudice" necessarily results just by losing the right to appeal.

*Sandoval-Lopez* further explained two options available in such a situation:

> If a defendant, even one who has expressly waived his right to appeal, files a habeas petition after sentencing and judgment claiming that he ordered his attorney to

25

appeal and his attorney refused to do so, two things can happen. The district court can hold an evidentiary hearing to decide whether petitioner's allegation is true, and if it is, vacate and reenter the judgment, allowing the appeal to proceed. Or, if the [government] does not object, the district court can vacate and reenter the judgment without a hearing and allow the appeal to proceed, assuming without deciding that the petitioner's claim is true.

*Id.* at 1198.

Thus, guided by *Sandoval-Lopez*, the court directs the United States to inform the court by **March 28, 2013** if it (1) seeks an evidentiary hearing as to whether Claxton actually instructed Harrison to file a notice of appeal and Harrison refused, or (2) elects not to oppose the § 2255 Motion solely on this remaining ground, and to instead permit Claxton to appeal. If the United States seeks an evidentiary hearing, the court will appoint counsel for that limited purpose under Rule 8 of the Rules Governing Section 2255 Proceedings for the U.S. District Courts.

## V. <u>CERTIFICATE OF APPEALABILITY</u>

The court has denied Claxton's § 2255 Motion as to all grounds except the claim that counsel was ineffective in failing to file a notice of appeal. The court thus addresses here whether Claxton should be granted a certificate of appealability ("COA") as to the four dismissed grounds. *See* R. 11 Governing

Section 2255 Proceedings (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant"). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient." *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), *overruled on other grounds by Swarthout v. Cooke*, 131 S. Ct. 859 (2011). The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further." *Id.* (citation and internal quotation marks omitted). The standard "requires something more than the absence of frivolity but something less than a merits determination." *Id.* (internal quotation marks omitted).

The court carefully reviewed Claxton's assertions and gave her every benefit by liberally construing them. Claxton had the opportunity to explain her assertions in response to the government's Opposition and evidence. It is clear, however, that (1) prejudice cannot have resulted from the allegations that counsel failed to seek and obtain a plea bargain; (2) even assuming that one or both counsel did not review the PSR with Claxton to her satisfaction, there is no basis for finding that performance of counsel was deficient, or that any deficiency was

prejudicial; (3) the record plainly reflects that counsel was neither ineffective in arguing for a mitigating role reduction, nor would any such deficiency be prejudicial; and (4) there is no basis for an ineffective assistance claim regarding Rule 35(b) relief. As to these four grounds, reasonable jurists could not find the court's rulings to be debatable. Accordingly, the court DENIES issuance of a COA as to these grounds.

## VI. CONCLUSION

For the foregoing reasons, the court DENIES Claxton's § 2255 Motion in part, as to grounds One, Two, Three, and Five. The court DENIES a COA as to those grounds. As to ground Four, alleging ineffective assistance of counsel for failure to file a notice of appeal, the United States is DIRECTED to file a Response pursuant to *Sandoval-Lopez* by **March 28, 2013**.

To be clear administratively, because the § 2255 Motion as a whole remains open, it is premature to enter judgment (even if the court has denied relief

///

///

///

///

///

on all but one ground).  The court will address ground Four after reviewing the

government's Response.

IT IS SO ORDERED.

DATED, Honolulu, Hawaii, March 18, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Claxton v. United States*, Civ. No. 12-00433 JMS-KSC; Cr. No. 10-00108 JMS, Order
(1) Denying in Part Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by
a Person in Federal Custody; and (2) Denying Certificate of Appealability as to Certain Claims